IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELVIN THOMAS,                                                    OPINION & ORDER

                        Petitioner,           18-cv-210-wmc
                                                                 12-cr-155-wmc
     v.

UNITED STATES OF AMERICA,

                        Respondent.

---

Under 28 U.S.C. § 2255, petitioner Melvin Thomas filed a motion to vacate his convictions on one count of conspiracy to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846, and two counts of possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1).   The petition is before the court for preliminary review under Rule 4 of the Rules Governing Section 2255 Cases.   In conducting this review, the court has considered Thomas's petition and supplement, as well as all the materials from Thomas's criminal proceedings before this court and before the Court of Appeals for the Seventh Circuit.   Because these materials plainly show that Thomas is not entitled to relief under § 2255, his petition will be dismissed.

BACKGROUND[1]

### A. Thomas Investigation

In 2010, agents of the Drug Enforcement Agency ("DEA") were investigating a

---

[1]  Where appropriate, the court cites filings from the underlying criminal proceeding, using the designation "C.R."

known heroin dealer and intercepted phone calls to Thomas.   This resulted in DEA agents also investigating Thomas.

On November 9, 2010, the DEA learned in particular that Thomas was traveling back to Wisconsin from Chicago and carrying heroin.   Madison police officers conducted a traffic stop of the vehicle during the early hours of November 10.   A woman named Anita Andrews was the driver, and Thomas was the passenger.   After searching the car, patting down Andrews, and finding no contraband, officers let them go.[2]

On December 8, 2010, a police officer placed a GPS tracking device on a Dodge Caravan that Thomas was using.   On December 10, 2010, Wisconsin State Trooper Jonathan Fenrick stopped that same vehicle as it was arriving in Madison from Chicago because the headlights were turned off, unaware of the ongoing DEA investigation and GPS device.   A woman named Porcha Bell was driving, and Thomas was the passenger. After a drug detecting dog alerted to the odor of controlled substances, Thomas was patted down and placed in the back of a squad car while an officer ran a computer check on him. After finding an active warrant, Thomas was then arrested on a Wisconsin probation hold.

Madison Police Department Detective Dorothy Rietzler also proceeded to question Bell, who admitted that she was concealing 25 grams of heroin in her vagina, ostensibly at Thomas's request.   Bell further stated that she agreed to conceal the drugs for Thomas because he had provided her children Christmas presents *and* she was afraid Thomas would leave her in Chicago if she refused his request.

---

[2] As detailed below, Andrews later testified that she had been concealing drugs in her genital area.

Agents subsequently conducted a consented search of the home of Thomas's November 10th driver, Anita Andrews.  During that search, agents found a digital scale, chemical substance used to cut or mix drugs, and 22 sandwich baggies with corners cut out.  Before leaving, officers seized those items, as well as questioned Andrews and two other adults.  Later that morning, agents also listened to Thomas's post-arrest, jail calls. Thomas first called his mother, asking her to call Andrews and to tell her to get rid of his "stash" and to get cash out of the Cadillac that he had parked at her residence. Accordingly, Detective Rietzler obtained a search warrant for the Cadillac, and five days later agents searched it, finding approximately $2,460 in the glove box of the vehicle, but no drugs.

Eventually, Thomas was indicted by a federal grand jury on:  one count of conspiracy to possess with intent to distribute a mixture or substance containing heroin; and two counts of possessing with intent to distribute a mixture or substance containing heroin.

## B. Motion to Suppress

Because Thomas was unable to work with his appointed counsel -- in large part due to Thomas's insistence on challenging the indictment and pursuing a motion to suppress all evidence related to the GPS device attached to the Cadillac -- the road to trial in this case proved long.

In January of 2014, Thomas's third-appointed defense counsel did file a motion to suppress all physical evidence and statements obtained from his arrest following the second traffic stop on December 10, 2010, and the subsequent search of Andrews' home.   While

3

that motion was briefed, however, Thomas's relationship with his third-appointed counsel soured, and the court appointed Thomas's *fourth* attorney in April of 2014, Attorney Robert Ruth, although he, too, was allowed to withdraw in October of 2014.   Thomas proceeded for a short time without counsel.   On January 5, 2015, Magistrate Judge Crocker issued his Report and Recommendation ("R&R") to deny Thomas's fully briefed motion to suppress.   (C.R., R&R (dkt. #129).)   While Thomas objected to Judge Crocker's R&R, he also requested that counsel be appointed for trial.

After that request was granted, the court appointed Attorney Reed Cornia, who declined to supplement Thomas's own objections to the R&R.   About a month later, the court adopted Judge Crocker's R&R.   First, the court agreed with Judge Crocker's findings that the probation hold was not used to evade the Fourth Amendment, particularly because the warrant was in the system when Thomas was arrested and no persuasive evidence suggested the drug task force intervened to obtain the warrant.   Moreover, the court found that Thomas's behavior and the circumstances of the traffic stop supplied reasonable suspicion to justify the probation hold.   Second, the court agreed with Judge Crocker's conclusion that Thomas's incriminating phone call was legally attenuated from the arrest, noting:   Bell's confession and implication of Thomas; and the government was not involved in Thomas's decision to make that call.   Third, the court rejected Thomas's challenge to Andrews' consent to search the house because Thomas had provided neither evidence that Andrews failed to voluntarily consent to the search, nor that her consent was coerced.   Fourth and finally, the court accepted Judge Crocker's finding that there was no basis to suppress evidence discovered in the impounded vehicle, agreeing that:   (1) the

initial seizure was justified; (2) Thomas's phone call from the jail provided probable cause to search the Cadillac; and (3) a five-day delay between the seizure of the vehicle and the search was minimal and not prejudicial.

### C. Jury Trial

A three-day, jury trial commenced on May 18, 2015.   Andrews testified on behalf of the government, detailing the November 10, 2010, traffic stop and search.   She also testified to driving Thomas to Chicago on several occasions, where they would purchase heroin and return to Madison, either directly to Andrews' house or stopping at Thomas's mother's house.   With respect to that stop, Andrews testified Thomas had directed her to conceal the heroin in her genital area, telling "[d]o this or I'll knock you the f--k out." (C.R., Tr. First Day (dkt. #244) 168).)   Andrews further testified that after this November 2010 stop, everything with Thomas "went downhill."   (*Id.* at 169.)   Although she rarely saw Thomas after that, Andrews testified specifically that he still kept personal items at her home.

The government also called two investigative agents to testify.   A DEA agent, Terrence Glynn, testified about the wiretap that captured Thomas's conversations with a heroin dealer, Domingo Blount, while detective Rietzler testified about the December 10, 2010, traffic stop.   At the close of the government's case, Thomas's counsel moved for judgment of acquittal, which the court denied, finding that the circumstantial evidence was strong enough for the case to proceed.

In Thomas's case, the defense called two witnesses:   Portia Bell, who was driving at Thomas's second traffic stop, and defendant Thomas himself.   Although subpoenaed by

the defense *and* the government, when Bell did not appear for trial, the court allowed defense counsel to play a recording of her testimony at Thomas's state probation revocation proceedings.   During that testimony, Bell recited her version of the events of December 10, 2010, including that she, too, concealed drugs in her genital area at Thomas's request.

As for Thomas's testimony in his own defense, he disavowed *any* heroin possession. Rather, Thomas testified that he was actually purchasing medicinal marijuana from Blount, which explained why he communicated with Blount via text and phone calls in a manner referring to the sale of drugs.   Thomas further testified:   (1) that Andrews did not help him with these sales; and (2) his relationship with Andrews was rocky because they were cheating on each other.

As for his December 10 traffic stop with Bell by State Trooper Fenrick, Thomas provided a different explanation:

> I was at -- I had went to a party over in the Castille area and later that night my cousin Matt and Porcha Bell had showed up at this party.   Matt had ended up going home with a chick, a female that he was messing with, so I ended up getting the van from him.   And a little later after that, I had -- I was getting ready to go home and Porcha Bell had asked me to drop her off and I told Porcha Bell that since we were both heading in the same direction, on the east side, I told Porcha Bell that I would drop her off on the conditions that she drive to her destination and then I would drive home from there, which was to my house, Anita -- me and Anita's house.   Because I didn't want to drive because I had like four driving traffic tickets that I had owed money on.
> I asked Porcha Bell did she had a driver's license and she told me yeah.   So I let her drive.   On my way home, she got off the beltline on Stoughton over on Pflaum Road and she didn't have -- she was driving without headlights on, so we ended up getting pulled over for a traffic stop.

(C.R., Tr. Second Day (dkt. #248) at 170-71).)   Thomas further claimed that he was unaware Bell was in possession of drugs and believed that Detective Rietzler must have coerced her to say the heroin belonged to him.

At the close of the evidence, the jury not only found Thomas guilty of both charged offenses, but found that the conspiracy involved 100 grams or more of heroin.

### D. Sentencing

The U.S. Probation Office's presentence report ("PSR") recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a drug house, as well as Thomas's treatment as a career offender under § 4B1.1(b)(1) because of his accumulation of four felony convictions for controlled substance offenses before the conduct charged in this lawsuit.   Thomas filed no written objections to the PSR, although his counsel reiterated at sentencing that Thomas maintained his innocence and objected generally to the facts and reasoning in that report.

At sentencing, this court accepted the drug house enhancement,   explaining that: "The defendant stored and packaged heroin at his girlfriend's home where the defendant was residing at times during the conspiracy.   This enhancement includes the storage of a controlled substance for the purpose of distribution."   (CR, Statement of Reasons (dkt. #212) 4.)   The court further agreed that Thomas was a career offender, resulting in an advisory guideline imprisonment range of 360 months to life.   Ultimately, however, the court imposed a below-guidelines sentence of 216 months of imprisonment.

### E. Appeal

On direct appeal, Thomas's new counsel challenged the sufficiency of the evidence to support his conspiracy conviction and the court's imposition, under the guidelines, of an enhancement for maintaining a drug house.  The Court of Appeals for the Seventh Circuit affirmed both his conviction and sentence.  *United States v. Thomas*, 845 F3d 824 (7th Cir. 2017).  First affirming the conspiracy conviction, the Seventh Circuit rejected Thomas's argument that Andrews' participation was insufficient to sustain the conspiracy conviction because she did not knowingly agree with Thomas and did not receive any payment or consideration for her role.  On the trial record, the court specifically noted that the jury could have concluded that Andrews was a knowing co-conspirator because she (1) drove Thomas to and from Chicago to buy heroin, (2) assisted in accomplishing the objective of the conspiracy, (3) rented vehicles for those trips, (4) drove him to locations to make drug deliveries, and (5) on at least one occasion, hurriedly packed heroin for Thomas at his direction.  *Id.* at 830-31.  The court further found that even though Thomas may have been angry when he directed Andrew is this way, the jury still could have found that both parties "embraced the conspiracy's objectives." *Id.* at 831 (quoting *United States v. James*, 540 F.3d 702, 708 (7th Cir. 2008)).  Finally, the court rejected the argument that Andrews could not be a co-conspirator simply because she gained no tangible benefit, since a profit motive was not an element of the crime.

Second, the court rejected Thomas's objection to his guideline enhancement for maintaining a drug house.  Finding that Thomas did not raise the argument properly before this court, the Seventh Circuit reviewed and affirmed the enhancement under the

plain error standard.   *Id.* at 832.   In contrast, Thomas had argued that the enhancement could not apply to him because:   (1) he did not have a possessory interest over Andrew's home; and (2) the home's primary purpose was not to house his drug operation.   However, as the Seventh Circuit noted, the enhancement does not require an ownership or leasehold interest.   *Id.* (citing *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013)). The court further observed that Andrews' testimony supported a finding that Thomas resided with her for the purpose of dealing drugs, as did the presence of Thomas's personal items kept at her house.   The court similarly noted other evidence supported the finding that part of the home's primary purpose was drug dealing, including:   Thomas's referral to "stash spots" in Andrews' residence in a phone call to his mother; Thomas's use of the residence for his drug activities; the presence of tools for drug packaging that Thomas kept there; Andrews' testimony that she also packaged heroin for Thomas at least once; Andrews' belief that the television console was used to store drugs; and the December 2010 consented search of Andrews' home, which yielded a digital scale, cutting agent and plastic sandwich baggies with cut corners.

Finally, the court noted that the drug house enhancement was supported under the guidelines by witness statements memorialized in Thomas's PSR.   Specifically, Trina Harr, who lived with Thomas and Andrews for a period of time (and was present at the search of Andrews' home), stated that she observed Thomas cutting up heroin seven to eight times there, and saw Thomas retrieve a scale from downstairs' closet of the home numerous times.   *Id.* at 834.

OPINION

## I.  Standard on Preliminary Review

Rule 4 of the Rules Governing Section 2255 Cases directs this court to enter a dismissal if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]"   If not, then the judge must order the respondent to file an answer, motion, or other response within a fixed time, or take other action.   When the court reviews a petition for the first time, it evaluates whether the petition crosses "some threshold of plausibility" before the government will be required to answer.   *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996).

Habeas "relief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process."   *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).   Accordingly, relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).   For the same reason, a motion under § 2255 cannot be used to relitigate matters that were raised on direct appeal.   *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).   Likewise, claims omitted on direct appeal may be considered on collateral review *only* if the petitioner can show good cause for failing to raise the issue previously and actual prejudice based on the alleged error. *See, e.g., Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005).

10

In his petition, Thomas insists that he is innocent of his crimes of conviction and seeks relief on the basis that his appellate counsel was ineffective for pursuing "frivolous" arguments on appeal, rather than the seven arguments that he believes should have been asserted.   However, even if the court were to accept that Thomas' failure to raise these claims do not preclude him from pursuing them here, *see Massaro v. United States*, 538 U.S. 500, 504 (2003), they still plainly fail on the merits.

As an initial matter, claims for ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   *Howard v. Gramley*, 225 F.3d 784, 790-91 (7th Cir. 2000); *see also Winters v. Miller*, 274 F.3d 1161, 1168 (7th Cir. 2001).   To prevail under the Strickland standard, a petitioner must demonstrate both:  (1) constitutionally deficient performance by counsel; and (2) actual prejudice because of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 39091 (2000).   Moreover, appellate counsel's performance is measured against that of an objectively reasonable attorney, *Brown v. Finnan,* 598 F.3d 416, 425 (7th Cir. 2010), recognizing that appellate attorneys must winnow out weaker arguments and focus on key issues most likely to succeed, *Knox v. United States*, 400 F.3d 519, 521(7th Cir. 2005), rather than raise *all* non-frivolous issues.  *Id.*; *Page v. United States*, 884 F.2d 300, 302 (1989).

Accordingly, courts evaluate appellate counsel's performance based on the appealable issues available and the reasonable probability that raising an issue would have affected the outcome of the appeal.  *Gramley*, 255 F.3d at 791.   In particular, if appellate counsel failed to raise significant and obvious issues, then the court must weigh whether

those issues are stronger than the issues appellate counsel chose to raise.  *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).   When courts find that appellate counsel did not raise stronger, obvious issues, then the plaintiff has overcome the presumption of effective counsel.  *Id.*  With these standards in mind, the court will turn to defendant's claims of deficient performance of appellate counsel.

## II.   Grounds for Relief

Thomas claims that his counsel was deficient in failing to raise the following seven, additional arguments on appeal:   (1) his trial counsel failed to challenge the GPS placement in the motion to suppress; (2) the warrantless apartment search was invalid because Andrews did not consent; (3) the wiretap evidence should not have been admitted; (4) his trial attorney failed to obtain testimony from two witnesses; (5) he was not able to object adequately to Judge Crocker's Report and Recommendation ("R&R) to deny his motion to suppress; (6) he was unable to object to the Presentence Investigation Report ("PSR"); and (7) he should receive jail credit for time served between January 8, 2013, and July 31, 2015.

### A.  Placement of GPS Device and Other General Challenges

Thomas maintains that evidence collected from the GPS device, apartment search, and wiretap should have been excluded at trial, and that his appellate attorney was likewise ineffective in failing to point those mistakes out on appeal.   Despite devoting several pages of his petition to arguments challenging the admissibility of this evidence, each argument

12

is largely conclusory, establishing neither deficient performance by his appellate counsel, nor prejudice.

Starting with the GPS evidence, Thomas insists that his trial counsel was ineffective in failing to challenge the police officers' placement of a GPS device on the Dodge Caravan, which he was driving when he was pulled over on December 10, 2010.  Specifically, Thomas's position is that the December traffic stop was illegal because it would not have occurred but for the GPS stop from the month prior, and thus all evidence gathered after that stop should have been excluded.  Thomas further claims he and his trial attorney (Ruth) disagreed about whether to seek suppression based on Thomas's refusal to attest where the vehicle was parked at the time the GPS device was placed on it.

The first problem with this mish-mash of arguments is that the more stringent "plain error" standard applied to this claim because Thomas's trial counsel did not actually pursue a challenge to the GPS evidence.  *United States v. Flores*, 739 F.3d 337, 340-41 (7th Cir. 2014) ("[Defendant] never asked that the judge give him a new trial on the ground that his counsel had furnished ineffective assistance.  This means that appellate review is limited by the plain-error standard . . . .  And the Supreme Court has concluded that the plain-error standard is a demanding one.") (collecting cases).

Second, Thomas makes no real effort to connect the dots between the GPS tracking device and the December 10 traffic stop in a manner suggesting that his appellate counsel missed an obvious and strong argument on appeal.  To the contrary, the records shows that the traffic stop that led to defendant's arrest was initiated by Officer Fenrick, who had

*zero* knowledge of the DEA's investigation of Thomas, but only stopped the vehicle because its headlights were not functioning.

Third, the record shows the trial counsel *agreed* to explore a challenge to placement of the GPS device, but after investigation, chose not to file a motion to exclude evidence related to the traffic stop or Bell's testimony.   In fact, trial counsel Ruth elaborated on his decision-making process during multiple *ex parte* hearings before Judge Crocker, during which he indicated an intent to pursue the motion with the need for further investigation and an affidavit from Thomas, then further explained in detail why Thomas and he had reached an impasse about what to include in the motion and whether there was a legal basis to pursue it.   (*See* dkt. #108, at 15-36; dkt. 125, at 6-17, 24-27.)   While Thomas takes issue with Ruth's judgment both then and now, he makes *no* effort to explain why this judgment -- only reached after investigation and multiple discussions with Thomas and the court -- was flawed.   Accordingly, the court has no basis to conclude that Attorney Ruth performed deficiently at the district court level in failing to challenge a GPS placement through a motion to suppress, much less that his appellate counsel performed deficiently in failing to raise that omission on appeal.

Thomas does include several, other arguments unrelated to GPS tracking device, including that:   Bell was forced to lie to the officers about Thomas having asked her to store heroin in her vagina; his attorney failed to challenge Bell's statements or the indictment; Thomas was falsely told by officers that he was on a probation hold during the December 10 traffic stop; and the search of Thomas's cell phone was illegal.   Yet beyond asserting that all of this shows his convictions were unconstitutional generally, Thomas has

14

not explained how his appellate attorney's omission of these arguments on appeal left out an *obviously stronger* argument than the two actually raised.   This omission is significant, particularly since this court addressed the merits of these arguments in resolving Thomas's motion to suppress, and no obvious errors have been identified.

Again, to the contrary, Magistrate Judge Crocker held an evidentiary hearing to address Thomas's challenge to the stop and subsequent searches before trial.   As explained at the time, Judge Crocker then found, based on testimony and other evidence, that:   (1) the stop was not initiated because of the GPS device; (2) the probation hold was legitimate; and (3) regardless, Det. Rietzler had reasonable suspicion to support a probation hold. Ultimately, Thomas does not address:   these conclusions; this court's acceptance of Judge Crocker's findings in the R&R; or even hint at how his appellate attorney's failure to challenge these conclusions, along with the other arguments that were raised, amounted to deficient performance.

Accordingly, the court is left with Thomas's conclusory challenges to the traffic stop, which alone fall far short of meeting the demanding "deficient performance" standard applicable to appellate counsel.   *Winters*, 274 F.3d at 1167 (citing *Williams v. Parke*, 133 F.3d 971, 9754 (7th Cir. 1997)).

## B. Apartment search

Thomas next challenges the search of Andrews' apartment and the vehicle search, arguing that her consent was not voluntary because officers said they would obtain a warrant and threatened to take her children from her.   He further argues that the officers conducting the search found the $2,460 in cash in his mother's vehicle, who also refused

15

consent to search the vehicle.   As to the contents of the vehicle, Thomas claims that the officers let a K-9 sniff the vehicle *twice*, but despite the K-9 *not* alerting to the presence of drugs, officers still had that vehicle towed and searched without a warrant, then waited five days to search it.

Although not explicit in Thomas's motion, it appears that he would also fault his appellate counsel for failing to raise any of these issues on appeal.   However, the court *specifically* considered and rejected Thomas's challenge to the search of the home and the Cadillace in resolving Thomas's motion to suppress.   (C.R. dkt. #165, at 9-10.)   Thomas does not acknowledge Judge Crocker's reasoning in the R&R, nor this court's acceptance of his factual findings and legal conclusions.   Nor does Thomas identify how his appellate attorney could have *effectively* challenged this court's handling of the issues present in the motion to suppress.   As such, the court sees no basis to find that his counsel performed deficiently in declining to challenge those rulings on appeal.

## C.  Wiretap evidence

Next, Thomas claims that the wiretap evidence collected by the government related to his interactions with individuals in Chicago (specifically, Blount) should not have been admitted because the evidence originated in Chicago and thus could not be used against him in his criminal prosecution before this court.   Thomas cites no legal authority in support of his novel position, nor does he challenge the validity of the wiretap more broadly.   Instead, Thomas asserts that he believes that the Wisconsin police mislead Illinois law enforcement officers to collect evidence to support the illegal indictment against him.   Again, however, Thomas's belief is wholly unsupported by evidence or legal

16

authority.   Accordingly, his trial and appellate counsels' failure to challenge the admission of the wiretap evidence did not amount to deficient performance.

### D. Witnesses

Thomas further argues, if unconvincingly, that the in-person testimony of Domingo Blount and Porcha Bell would have changed the outcome of his trial.   As to Blount, Thomas claims that his then-trial attorney, Reed Cornia, refused to subpoena Domingo Blount to testify, which he claims was significant because Blount would have testified that Thomas had never purchased heroin from him, and instead, intended to purchase medical marijuana.   Thomas relatedly represents that Cornia refused to ask Thomas about his involvement in buying medicinal marijuana from Blount, which Thomas claims would have shown his innocence.

The problem with these arguments is that defense counsel would have need to commit to pursuing this defense that does little to nothing to rebut the government's evidence of Thomas's handling of heroin and transporting heroin.   For example, Thomas has not explained how Blount's testimony would have rehabilitated *Thomas*, which would have been an uphill battle given the likelihood that the government would have been able to discredit him *and* in the face of Andrews' and Bell's testimony that they trafficked heroin at Thomas's behest.   As such, the court sees no basis to question trial counsel's judgment not to pursue Blount as a witness in Thomas's defense, much less to find that Thomas's appellate counsel failed to raise that decision on appeal.

As for Bell, Thomas correctly points out that he was unable to question her under oath with respect to the heroin stored in her vagina at the time of the December 10, 2010,

traffic stop.   However, her absence was neither his trial attorney's fault, nor does Thomas explain how her presence would have resulted in *different* testimony.   Furthermore, during closing arguments, Thomas's trial attorney spoke directly about Bell's testimony that the jury heard from the revocation proceeding, strongly suggesting that she was unreliable and uncooperative with law enforcement and the judge.   (C.R. Trial Tr., dkt. #249, at 39.) Indeed, Thomas explicitly stated:

> Ms. Porcha Bell chose not to show up.  I think that speaks volumes to her credibility.  Volumes to her credibility.  You heard my client's explanation about what happened at a party. . . .  He offered to give her a ride home.  But again, it comes down to she was caught with heroin in her person.  She was threatened with charges."

(*Id.* at 44-45.)   If anything, by highlighting Bell's absence, Thomas's trial counsel actually took the advantage by arguing that the jury should discredit her testimony, which does not suggest the type of error that Thomas's appellate counsel should have developed on appeal.

Finally, Thomas argues that multiple police officers were not called as witnesses, including Madison police Det. Rietzler and Becka.   However, beyond asserting that he had the right to question them under oath, Thomas does not explain how their testimony would have exonerated him of the charges in the indictment.   Therefore, there is no basis to infer that appellate counsel missed an obvious *or* stronger argument than those actually raised.

### E.  Objection to R&R

Thomas also claims that he was unable to challenge Judge Crocker's recommendation to deny his motion to suppress, and that Attorney Cornia performed

deficiently in failing to do so.   Again, if Thomas's counsel raised this argument on appeal, the plain error standard would have applied, and this court sees none because Thomas was actually allowed to object to the R&R, untimely or not.

Thomas's motion had been pending for a *year*, since Thomas's attorney who filed that motion withdrew several months after it was filed, and without it being fully briefed, while the court was attempting to determine whether Thomas would represent himself or be appointed yet another attorney.   When Thomas was appointed a new attorney in June of 2014, the court offered Attorney Ruth the opportunity to investigate and determine whether to supplement the pending motion.   After Ruth investigated Thomas's additional, proposed challenges to the government's case, he, too, declined to file anything further in support of that motion.   This this plainly frustrated Thomas to the point that this court had to intervene to determine whether to permit Ruth to withdraw, Attorney Ruth continued his representation of Thomas, filing and then later withdrawing an additional motion to suppress data obtained via the GPS device.

After withdrawing that motion, however, Thomas and Ruth hit yet another impasse, which led the court to allowing him to withdraw on October 16, 2014, and at *that* point, the court informed Thomas that he would be representing himself *and* gave him another month to file *additional* briefing in support of his motion to suppress.   Instead, Thomas filed nothing, nor did he reply to the government's opposition brief, and Judge Crocker issued his R&R on January 5, 2015.   Only at that point did Thomas take the opportunity to object, both requesting appointment of counsel again *and* raising numerous objections to the R&R.   (Dkt. #137.)   Thomas also attempts to fault his new counsel, Cornia, for

19

failing to raise objections to the R&R *in addition* to those already lodged, but Thomas fails to cite any objections he believes Cornia should have raised.   Given that the court considered Thomas's objections in accepting the R&R and in denying the motion to suppress, therefore, the court sees no plain error with respect to Thomas's ability to object to the R&R.

### F.  Objection to PSR

Thomas similarly claims that he did not receive the chance to object to his PSR, but does not articulate any specific aspect of the PSR that he intended to challenge, beyond the drug house enhancement already addressed on direct appeal.   He also fails to identify any possible challenge to the well below-guidelines, 216-month sentence that the court ultimately imposed.   As such, there is no basis for the court to conclude that his counsel was deficient with respect to the PSR, much less that his appellate counsel performed deficiently in failing to bring up some new issue on appeal.

### G.  Jail credit

Finally, Thomas argues that he is entitled to jail credit for the time he spent in state custody between January 8, 2013, and July 31, 2015.   However, Thomas already filed a motion asking for sentence credit for that period of time, which the court denied on May 10, 2016, because his time served in state custody was credited toward his state sentences. (Dkt. ##255, 257.)   Thus, he is not entitled to have that time count toward his federal sentences.   *See* 18 U.S.C. § 3583(b).   Thomas does not acknowledge or identify an error in this ruling.

20

In any event, § 2255 is not the proper vehicle to challenge the way his sentence is being carried out; rather, a petition under 28 U.S.C. § 2241 is the proper manner in which to challenge the administration or computation of a sentence.  *See Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000) ("Requests for sentence credit, or for recalculation of time yet to serve, do not come under § 2255.").  Accordingly, any remaining frustration that Thomas may have with the calculation of his time served is not a basis for relief under § 2255.

## III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)).  For all the reasons just discussed, Thomas has not made such a showing.   Therefore, a certificate of appealability will not issue.

## ORDER

IT IS ORDERED that:

1.  Pursuant to Rule 4 of the Rules Governing Section 2255 Cases, petitioner Melvin Thomas's motion to vacate is DENIED and his petition is DISMISSED for his failure to state a plausible claim for relief.

2.  No certificate of appealability shall issue.

3.  Thomas's motion to unseal transcripts and other documents and for extension (dkt. #5) is DENIED as moot.

Entered this 27th day of January, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge